IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| Ping Lu, Jill McKeon, Richard McKeon, Stephen Spencer, Spencer Stopa, and Judy C. Winnegar, on their own behalf and on behalf of a certified class of similarly situated persons,<br><br>                 Plaintiffs,<br><br>    v.<br><br>OppenheimerFunds, Inc., Oppenheimer Private Investments, Inc., and OppenheimerFunds Distributor, Inc.,<br><br>                 Defendants. | Case No.    1:14-CV-00618-KBM-RHS |

**OFI'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

PLEASE TAKE NOTICE that defendants OppenheimerFunds, Inc. ("OFI"), OFI Private Investments, Inc. ("OFIPI"), and OppenheimerFunds Distributor, Inc. ("OFDI") (collectively, "OFI") hereby move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the May 14, 2014 First Amended Complaint ("FAC") on the grounds that Plaintiffs have failed to state a claim upon which relief can be granted.

**INTRODUCTION**

This action arises out of class action litigation between Plaintiffs and the Education Trust Board of New Mexico, the Education Plan Trust of New Mexico, and the State of New Mexico (collectively, the "Board") commenced in June of 2009 as *Lu, et al. v. The Education Trust Board of New Mexico, et al.*, No. D-101-CV-2009-02051, in the State of New Mexico, County of

1

Santa Fe, First Judicial District (the "Class Action"). In the Class Action, Plaintiffs alleged that they and the absent class members were investors in the State of New Mexico 529 college savings plans that allegedly suffered losses due to the Board's mismanagement of their investments during the financial crisis of 2008. *See* Declaration of Joshua D. N. Hess ("Hess Declaration"), Exhibit 1 (the "Class Action Complaint").[1] Notably, Plaintiffs did not name the plans' program manager, OFI, as a party in the Class Action. Rather, Plaintiffs alleged that OFI kept the Board fully informed and that it was the Board's misconduct that caused Plaintiffs' investment losses. The Board paid $3.75 million to settle the Class Action.

Notwithstanding their allegations in the underlying Class Action litigation, Plaintiffs' current lawsuit advances a complete narrative reversal in an attempt to "double their money." Plaintiffs bring this action as purported "assignees" of an indemnification claim that the Board "has or may have" against OFI for its "Losses" arising from the Class Action. In short, Plaintiffs now seek to recover from OFI – for themselves and for the benefit of the class in their original lawsuit – the amount of the settlement payment that the Board has already paid them. As explained more fully below, Plaintiffs have no viable claims against OFI and Plaintiffs' FAC should be dismissed accordingly.

---

[1] On a motion to dismiss, this Court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("[i]n addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."). The FAC incorporates by reference the allegations of the Class Action Complaint against the Board, and is therefore properly before the Court on OFI's Motion to Dismiss. *See* FAC ¶ 12. The Class Action Complaint is also properly subject to judicial notice, as explained in OFI's Request For Judicial Notice ("RJN") filed concurrently herewith.

First, the FAC must be dismissed because Plaintiffs have failed to adequately allege any misconduct by OFI that would trigger the limited indemnification provisions of the Program Management Agreement ("PMA") between OFI and the Board (which is the only source of indemnification rights the Board may have against OFI).[2]  Aside from conclusory statements, the FAC is devoid of any alleged *facts* suggesting any misconduct by OFI whatsoever, let alone misconduct that would trigger the terms of the indemnification clause on which the case rests.

Second, Plaintiffs have not alleged that the Board suffered any recoverable "Losses" under the PMA.  Under the plain terms of the PMA, OFI is not required to indemnify the Board for losses resulting from its own negligence, bad faith, or willful misconduct.  In a dramatic turnaround, Plaintiffs, having extracted millions of dollars from the Board on claims that the Board was, at best, negligent in managing the 529 Plans, now turn to OFI for the same sums as if the Board was blameless.  Because the claims at issue in the Class Action that gave rise to the Board's "Losses" necessarily stemmed only from the *Board's* alleged negligent misconduct – and expressly not OFI's – the Board's payment to Plaintiffs is not indemnifiable under the PMA. The FAC does not allege otherwise.

Third, in 2010 OFI and the Board entered into a separate settlement of all the Board's potential claims against OFI.  That settlement agreement contained a clear release by the Board that covers Plaintiffs' purported claims as assignees.  Again, the FAC fails even to allege that Plaintiffs' claims are not barred by the Board's release.

---

[2]  Plaintiffs' Amended Complaint repeatedly refers to and relies upon the PMA.  *See* FAC ¶¶ 9-11, 13, 15, 34-35.  The PMA is therefore properly before this Court on OFI's Motion to Dismiss and is attached to the Hess Declaration as Exhibit 2.  *See Berneike,* 708 F.3d at 1146; *see also* RJN at 2-4.

3

Fourth, Plaintiffs' FAC must be dismissed because the PMA includes anti-assignment and third-party beneficiary clauses that preclude the Board from assigning their claims to Plaintiffs.

Fifth, even if the Board's claims could be indemnified and assigned under the PMA, the FAC must be dismissed because it fails to allege (and cannot allege) that the Board perfected their claims for indemnification as prescribed under the PMA.

Finally, the FAC must also be dismissed because Plaintiffs are seeking relief on behalf of a class without seeking to certify that class in this Court. Plaintiffs claim that they "hold the assigned claims on behalf of themselves *and a class* certified in New Mexico State Court (the 'Lu Class'), but this case against Defendants is not brought as a class action or collective action. It is a direct action between Plaintiffs/Assignees and Defendants." FAC ¶ 7 (emphasis added). Plaintiffs cannot, however, individually assert a claim that by definition belongs only to a class, but instead must comply with Fed. R. Civ. P. 23 to prosecute their claims. The FAC provides no allegations to support the certification of a class in this Court and any resolution of their claims in its current procedural posture would necessarily violate the due process rights of both OFI and the absent class members.

## BACKGROUND

### A.    The Program Management Agreement Between The Board And OFI

On November 10, 2005, OFI entered into the PMA with the Board to become program manager for the Education Plan of New Mexico College Savings Program and the Scholar's Edge 529 College Savings Plan (together, the "Plans"). FAC ¶ 9. Pursuant to the PMA, OFI made recommendations regarding how Plan assets would be invested and allocated in portfolios.

4

Importantly, however, final approval rested with the Board, consistent with its fiduciary obligations to plan participants. *E.g.*, Ex. 2, §§ 4.4, 5.2.

The PMA also provided that OFI would indemnify the Board for certain claims, under certain conditions. Specifically, Section 12.2 of the PMA provides that OFI will "indemnify, defend and hold harmless" the Board and certain officers and employees from and against any and all "Losses suffered, incurred or sustained" by them, or to which any of them becomes subject, "resulting from, arising out of or relating to": (1) a material breach of the PMA by OFI; (2) OFI's gross negligence, bad faith, willful misconduct or fraud; or (3) OFI's reckless disregard of its duties under the PMA. Ex. 2, § 12.2.[3] The FAC not only misquotes Section 12.2, but it leaves out a crucial limitation: regardless of the foregoing, OFI is *not* required to indemnify the Board for "Losses"[4] caused by: (1) the Board's violation of the PMA; (2) the Board's negligence, bad faith, willful misconduct, or willful violation of law; or (3) the Board's reckless disregard for their duties under the PMA. *Id.*

The PMA also contains an explicit anti-assignment clause. Section 18.6 of the PMA provides that ". . . this Agreement shall not be assigned by any party, except with the written consent of the other parties, which consent may be refused for any reason in the sole discretion

---

[3] The FAC misquotes Section 12.2 of the PMA by leaving out the fact that indemnification for a breach of OFI's duties under the PMA is limited to the "reckless disregard" of its duties. *Compare* FAC ¶ 10(e) ("constituting gross negligence, bad faith, willful misconduct or fraud by OFI or OFDI or their officers, employees, agents, representatives, delegates, or subcontractors *of their duties under this Agreement* ….") (emphasis added) *with* PMA § 12.2 ("constituting gross negligence, bad faith, willful misconduct or fraud by OFI or OFDI or their officers, employees, agents, representatives, delegates, or subcontractors or *the reckless disregard* . . . of their duties under this Agreement ….").

[4] "Losses" is defined in the PMA as "any and all losses, damages, costs, claims, liabilities, penalties, demands and expenses (including, without limitation, reasonable attorneys' fees and disbursements)." Ex. 2, § 12.1.

5

of such party[.]". Moreover, Section 18.8 of the PMA provides that its provisions are "solely for the benefit of . . . the Board, as well as the Trust, and nothing in this Agreement shall be construed to give to any other person (including, but not limited to, any Account Owner or Beneficiary. . .) any legal or equitable right, remedy or claim under or in respect" to the PMA.

### B. The 2010 Settlement Agreement And Release Of The Board's Claims Against OFI

In the fall of 2008, the global economy experienced an unprecedented crisis and, as a result of these unexpected market events, certain OFI portfolios in which the Plans invested sustained losses. Plaintiffs here allege that a significant amount of the fixed-income portion of the Plans' assets were invested in the Oppenheimer Core Bond Fund, the Oppenheimer Limited Term Government Fund, and the Oppenheimer Strategic Income Fund, and that during the market calamity of 2008 these funds lost 38.88%, 6.01%, and 16.14%, respectively. FAC ¶¶ 21-22.

On June 16, 2010, OFI and the Board entered into a settlement agreement that included a $67.31 million payment by OFI to the Board for the benefit of plan participants. FAC ¶ 19. In exchange, the Board released all claims that they "could have asserted against [OFI] on or at any time prior to May 28, 2010." *See* Hess Declaration, Exhibit 3 (the "OFI Settlement Agreement") § IV(B)(3).[5] The OFI Settlement Agreement also provided that Affected Plan Participants[6] who

---

[5] The FAC specifically refers to and relies upon the OFI Settlement Agreement, which is therefore properly before this Court. *See* FAC ¶¶ 13, 15, 19, *see also* RJN at 2-4.

[6] "Affected Plan Participant[s]" are defined as: (1) Scholar'sEdge Account Owners who had investments allocated to the Core Bond Fund at any time from January 1, 2008 through February 17, 2009, and had net losses of $10.00 or more, as of June 30, 2009; and (2) Education Plan Account Owners who had investments allocated to Core Bond Fund at any time from January 1, 2008 through March 2, 2009 and had net losses of $10.00 or more, as of June 30, 2009. *Id.* § II(4)(a)-(b) at 3.

signed and returned a release of OFI were to receive their pro rata share of the settlement proceeds within forty days of receipt of such release, and all other Affected Plan Participants were to receive their share within thirty days of September 30, 2012.  *Id.* § IV(C)(2)(a)-(b).

The Board's release of OFI contained one minor carve out – the Board did not release its potential claims for "indemnification pursuant to Section 12.2 of the [PMA], for any and all ***losses suffered by any Affected Plan Participant*** in his Account ***who does not execute a Release Letter*** releasing [OFI], whether such claims are asserted by arbitration, action filed in any State or Federal court or otherwise."  *See id.* § V(1)(f) (emphases added).

### C.     The Class Action And Settlement Between The Board And Plaintiffs

On June 25, 2009, Plaintiffs brought the Class Action against the Board for its mismanagement of the Plans.  Ex. 1, ¶ 34 ("This lawsuit concerns the State's mismanagement of certain Trust 'fixed income' assets, in breach of the Agreements").  Plaintiffs' allegations in the Class Action Complaint are highly relevant to the current action, not just because of the nature of the indemnity that Plaintiffs seek, but also because Plaintiffs have expressly incorporated the allegations from the Class Action Complaint into their FAC.  *See* FAC ¶ 12.

In the Class Action, and hence in the FAC, Plaintiffs allege that the Board breached its contract with Plaintiffs by failing "[1] to perform [their] obligations in good faith, i.e. to act honestly and in accordance with standards of fair dealing under the surrounding circumstances [and] . . . [2] 'to act with the care, skill and diligence, under the circumstances then prevailing, which would characterize the actions of a prudent person who is acting as such a trustee . . .'."  Ex. 1, ¶ 92.  Notably, Plaintiffs expressly disclaimed that they were asserting any claims against OFI.  *Id.*, ¶ 13.

On October 7, 2013, after four years of litigation and on the eve of trial, Plaintiffs settled the Class Action claims against the Board in exchange for a cash payment of $3,750,000 and an assignment to the named Plaintiffs "on behalf of themselves and a certified class … solely for the benefit of the Class" (FAC Ex. A) of "any indemnification rights" that "any Defendant may have" against OFI.  FAC ¶¶ 7, 14-15.  In their FAC against OFI, Plaintiffs allege that they and the class are "assignees" of the Board and are pursuing recovery for all "Losses" allegedly sustained by the Board, which they allege consist of the $3,750,000 settlement paid by the Board to the Plaintiffs and approximately $1,219,439 in attorneys' fees and costs expended by the Board.  *Id.*, ¶¶ 13-14, 17.

## ARGUMENT

**I.     LEGAL STANDARD FOR DISMISSAL UNDER RULE 12(B)(6)**

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  To survive a 12(b)(6) motion, a complaint must contain "enough facts that, if assumed to be true, state a claim to relief that is plausible on its face."  *See Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010).  A claim is facially plausible only when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

To avoid dismissal, a complaint must set forth more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* at 678; *see also Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." (internal quotation marks and alterations omitted)).

When a plaintiff seeks to assert assigned claims, "[i]t is well established that an assignee stands in the shoes of the assignor, and that by assignment the assignee could acquire no greater rights than its assignor." *Inv. Co. of the Sw. v. Reese*, 117 N.M. 655, 661 ( 1994) (quoting *Nat'l City Bank v. United States*, 163 F.Supp. 846, 852 (1958)). Moreover, "all equities and defense[s] which could have been raised by the debtor against the assignor are available to the debtor against the assignee." *Assocs. Loan Co., (N.S.L.) v. Walker*, 76 N.M. 520, 523 (1966).

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM

### A. The FAC Fails To Adequately Allege Conduct By OFI Entitling The Board To Indemnification

The FAC must be dismissed because Plaintiffs have failed to adequately allege any conduct by OFI that would trigger the indemnification provisions of the PMA. In order for OFI to be liable for indemnification under the PMA, the FAC would need to allege facts that OFI materially breached the PMA, or engaged in "gross negligence, bad faith, willful misconduct or fraud," or acted with "reckless disregard of its duties" under the PMA. Ex.2, § 12.2. Instead, the only facts alleged in the FAC are that OFI recommended reallocations of the Plan portfolios (FAC ¶ 25); OFI took unspecified "unnecessary risks" by using leverage and had knowledge regarding these risks (*id.* ¶¶ 26-30), and that OFI continued to recommend that the Board retain its investments after the Plans suffered losses (*id.* ¶ 31). And the Class Action complaint not only makes no allegations against OFI, it disclaims any intent to make OFI a party. The FAC cannot state a claim by simply *assuming* OFI must have done something wrong, and these sparse allegations fall far short of any plausible factual basis for concluding that the Board's settlement

9

payment in the Class Action was the result of any action by OFI, much less OFI's gross negligence, fraud, or reckless disregard of its duties under the PMA.

In fact, Plaintiffs have alleged just the opposite. The Class Action Complaint, and therefore the FAC, alleges that:

> Throughout the Class Period, *[t]he [Board] knew or had reason to know information concerning the management and performance of the Trust's fixed asset holdings*. On information and belief, *the Program Manager [OFI] kept the Board fully informed concerning the Plan's operations, including the management and performance of the Trust's fixed income holdings.* At least quarterly, the Program Manager provided the Board and the Trust with detailed, formal reports.

Ex. 1, ¶ 49 (emphasis added). Plaintiffs now allege that "[w]hile the riskiness of the underlying fixed income holdings was not apparent to the ***general public***, [OFI] was obligated to keep the assignors fully informed concerning the Plans' operations, including the management and performance of the Trust's fixed income holdings." FAC ¶ 29 (emphasis added). But Plaintiffs tellingly do not allege that OFI failed to perform this obligation, nor do they allege that the alleged riskiness was not apparent to the Board.

Given the paucity of any allegations regarding OFI's conduct, Plaintiffs' bald recitation of the legal conclusions that OFI "breached the contract with Assignors, including its covenant of good faith and fair dealing" and that OFI committed "gross negligence, bad faith, and or willful misconduct" (*id.* ¶¶ 35-36) are insufficient to state a claim. *See*, *e.g.*, *Berneike*, 708 F.3d at 1151 (affirming Rule 12(b)(6) dismissal of plaintiff's breach of contract claim when plaintiff failed to plead, inter alia, how defendant breached the contract); *Burnett v. Mort. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) ("'while Plaintiff is not required to set forth a prima facie case for each element, she is required to set forth plausible claims'

10

animating the elements of her causes of action") (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

      **B.**    **The FAC Fails to Adequately Allege That The Board Suffered Recoverable "Losses" Under Section 12.2 Of The PMA**

The plain language of the PMA, which Plaintiffs ignore, expressly provides that OFI's obligation to indemnify under Section 12.2 of the PMA does not extend to losses caused by the Board's own negligence or bad faith. Plaintiffs entirely fail to allege how the money paid by the Board to settle the Class Action, which focused *exclusively* on the Board's failure to perform its own duties to plan participants, was not paid on account of the Board's own misconduct. Nor could they. Accordingly, the FAC fails to allege that the Board suffered any losses that can be laid at the feet of OFI.

As described above, the Class Action Complaint, and therefore the FAC, is entirely predicated on *the Board's own negligence and bad faith* in managing the Plans. Plaintiffs cannot now allege that the Board was blameless with respect to the Plans' losses in 2008, when the litigation they brought that gives rise to this claim alleged that the Board negligently oversaw the Plans' investments and otherwise acted in bad faith. *Olpin v. Ideal Nat'l Ins. Co.*, 419 F.2d 1250, 1255 (10th Cir. 1969) (court is not "bound to accept mere legal conclusions or factual claims at variance with the express terms" of a document incorporated into complaint itself); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("[m]ere legal conclusions and factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true" for purposes of considering a motion to dismiss under Rule 12(b)(6)); *see also Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (the court is not required to "accept as true the complaint's factual

allegations insofar as they contradict . . . matters subject to judicial notice."); *accord Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013).

Plaintiffs' conclusory allegation that "the Assignors suffered, incurred, [and] sustained … Losses from and against which [OFI] agreed to indemnify the Assignors" (FAC ¶¶ 13, 37) entirely fails to allege that the Board's payment to Plaintiffs was not made to compensate for the Board's own conduct, and therefore fails to allege that the Board is entitled to indemnification under Section 12.2 of the PMA.

Indeed, Plaintiffs would be at great pains to do so. Even though Plaintiffs here assert a claim that belonged to the Board, they must still meet their own obligations under Federal Rule of Civil Procedure 11 in bringing this action. *See* Fed. R. Civ. P. 11(b)(3) ("[b]y presenting to the court a pleading, written motion, or other paper" the attorney certifies that "the factual contentions have evidentiary support . . ."). Given that Plaintiffs previously alleged in the Class Action that the Board (and not OFI) was responsible for their losses, that they obtained a $3.75 million settlement from the Board based on those claims, and they represented to the state court in obtaining approval of that settlement that they "firmly believe[d] they ha[d] meritorious claims on the merits"[7] against the Board, it would be impossible for them to now repudiate those allegations and representations made to a court in supposed good faith. Moreover, because the Plaintiffs have expressly incorporated their Class Action Complaint against the Board into the

---

[7] *See* Hess Declaration Exhibit 4 (Joint Unopposed Motion for Final Approval of Class Action Settlement, filed February 24, 2014) at 16. Plaintiffs' Motion for Final Approval is a matter of public record and therefore properly subject to judicial notice. *See*, *e.g.*, *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (taking judicial notice of all of the materials in the file from related state court action), *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings") (citations omitted); RJN at 4.

FAC, the allegations of the Board's misconduct therein necessarily vitiate any claim asserted here against OFI.  *Berneike*, 708 F.3d at 1151; *Burnett*, 706 F.3d at 1236.

### C. The Board Has Released The Claim Plaintiffs Are Attempting To Assert

The FAC must also be dismissed because the Board has already released the claim that Plaintiffs are seeking to enforce.  Specifically, the Board has released all claims "and any other right to obtain any type of monetary damages (including, without limitation, punitive damages), expenses, attorney's and other fees, rescission, or restitution or any other remedies of whatever kind at law, in equity, in contract, or in tort, arising under or related to the Covered Conduct," that they "could have asserted against [OFI] on or at any time prior to May 28, 2010."  Ex. 3, § IV(B)(3).

The "Covered Conduct" is defined as:

> duties, performances, acts, events, and/or omissions and claims, asserted or not asserted, related in any way to the Plan from November 10, 2005 through May 28, 2010, including claims relating to (a) the [PMA] . . . (b) the performance of the mutual funds, separately managed accounts and limited liability companies or partnerships . . . and/or (c) [OFI's] performance, acts or omissions with regard to the implementation, maintenance, management, marketing, distribution, offering of participation in, advisory services for, or administration of the Plan and its investment policies."

*Id.*, § II(8).  As opposed to what was released, the claim that the Board reserved in the OFI Settlement Agreement was narrow and specific – the Board did not release "any claims by or liability to" the Board for "indemnification pursuant to Section 12.2 of the [PMA], for any and all losses suffered ***by any Affected Plan Participant in his Account who does not execute a Release Letter releasing [OFI]***, whether such claims are asserted by arbitration, action filed in any State or Federal court or otherwise."  *Id.*, § V(1)(f) (emphasis added).

13

Plaintiffs acknowledge that "the Assignors have released [OFI] from certain claims" (*e.g.* FAC ¶ 13), yet they entirely ignore the plain language of the release itself.  Plaintiffs have made no allegations that any, let alone all, of the $3,750,000 paid by the Board to the Plaintiffs in the Class Action represents "losses suffered by any Affected Plan Participant in his Account who [did] not execute a Release Letter releasing [OFI] ," (*id.* ¶ 19) which is the only claim not released by the Board.  Instead, Plaintiffs are improperly seeking to assert a claim for all "Losses" pursuant to Section 12.2 of the PMA on behalf of the entire class that was certified in their previous Class Action.  Indeed, the named Plaintiffs do not even allege that they have personally declined to execute a release, such that their own losses recovered in settlement would conceivably survive the Board's broad release of indemnification rights.

Even more absurd is Plaintiffs' attempt to recover $1,219,439 in attorneys' fees, an amount that patently does not represent a ***loss by any Affected Plan Participant***, and therefore cannot now be indemnified.

Put simply, the Board broadly released the claims that Plaintiffs are attempting to assert. The FAC provides no allegation that the indemnification claim asserted survived that release, in whole or part, and their FAC should therefore be dismissed.  *Armijo v. Found. Reserve Ins. Co.*, 75 N.M. 592, 596 (1965) (affirming dismissal when plaintiff had executed a valid, "unconditional and unambiguous" release).

> **D.    The Language And Structure Of The PMA Prevents The Board's Assignment of Its Contractual Indemnification Claims**

The PMA contains a specific anti-assignment clause providing that ". . . this Agreement shall not be assigned by any party, except with the written consent of the other parties, which consent may be refused for any reason in the sole discretion of such party[.]"  Ex. 2, § 18.6.

14

Section 18.8 further provides that the PMA's provisions are "solely for the benefit of . . . the Board, as well as the Trust, and nothing in this Agreement shall be construed to give to any other person (including, but not limited to, any Account Owner or Beneficiary. . .) any legal or equitable right, remedy or claim under or in respect" to the PMA.

The Board's assignment of their contractual indemnification rights is in direct contravention of these provisions, and any potential indemnification claims that the Board may have had are not assignable under the plain terms of the PMA.  *Espinosa v. United of Omaha Life Ins. Co.*, 137 P.3d 631, 639 (N.M. App. 2006) (anti-assignment claims are enforced "in those situations where the language or circumstances indicate a clear intention to prohibit assignment"); *Ohio Envtl. Dev. Ltd. P'ship v. Envirotest Sys. Corp.*, 478 F. Supp. 2d 963, 981 (N.D. Ohio 2007) (language of anti-assignment clause and structure of contract demonstrated that the anti-assignment clause was enforceable).

### E.     The Board Did Not Perfect Its Indemnification Claim

Even if Plaintiffs' claims were valid and assignable, the Board failed to meet the requirements of Section 12.7(d) of the PMA to invoke its entitlement to indemnification.  The Board's indemnification rights under the PMA are not self-executing, but rather require it to satisfy numerous prerequisites to confirm indemnification for any "Loss."  For example, Section 12.7(d) of the PMA provides that OFI must "approve" any settlement the Board enters into, but authorizes the Board to settle a case without OFI's approval only if OFI does not "defend or contest" the Board's election to do so.  In the latter case, the Board's decision to settle such a matter without OFI's approval does not "create any additional obligation or liability on the part of [OFI]."  *Id.*

The Board has never requested OFI's approval of any settlement of the Class Action, although it "informed" OFI of the settlement. In response, by letter of October 3, 2013, OFI wrote the Board to inform it that OFI did not approve of the settlement to the extent it relied upon any indemnification from OFI. Moreover, on February 10, 2014, OFI submitted a letter with the court in the Class Action expressly rejecting any notion that OFI had indemnification obligations to the Board regarding its settlement with Plaintiffs. *See* February 10, 2014 Letter from Joshua D. N. Hess to The Honorable T. Glenn Ellington (the "Hess Letter"), attached to the Hess Declaration as Exhibit 5.[8] The Hess Letter specifically explained, among other things, OFI's position that the Board had not perfected their rights to indemnification under the relevant provisions of the PMA. *Id.* at 3-4. Despite this clear lack of approval from OFI, the Board went through with the settlement and thereby terminated any indemnification rights it may have had.

Similarly, even if it had not released its claim for any cost of defense of the Class Action, the Board failed to perfect its claims to such costs under the PMA. Section 12.7(b) provides that "[e]ach Indemnitor shall have the right to control the cost of defense and contest of all proceedings related to such Losses, except to the extent that an Indemnitee relieves it of its liability under the Indemnification Provisions with respect to such defense or contest." Moreover, under Section 12.7(d), "[a]n Indemnitee shall have the right to participate in all aspects of the defense or contest of any Losses … and may choose and retain, at its own cost and expense, separate counsel in connection therewith." Here, the Board never tendered a request for

---

[8] The Hess Letter was submitted to the state court and served on all parties in the Class Action, including Plaintiffs. The Hess Letter is also discussed in Plaintiffs' Motion for Final Approval. *See* Ex. 4 at 19 n.2, 21-24. It is therefore properly subject to judicial notice as a public record. *Kramer*, 937 F.2d at 774; RJN at 4.

16

defense and, indeed, hired the law firm Freedman Boyd Hollander Goldberg Urias & Ward, P.A. without OFI's approval and directed its own defense throughout the litigation. Tellingly, the FAC does not allege otherwise. *N. Cal. Monument Dealers Ass'n v. Interment Ass'n of Cal.*, 120 F.Supp. 93, 94 (N.D. Cal. 1954) ("[c]omplaint [of assignee upon assigned claim] must allege facts showing that … assignor would be entitled to relief."). By taking these steps, the Board relieved OFI of any obligation to indemnify its defense costs pursuant to Section 12.7(b) of the PMA.

### F.     Plaintiffs' FAC Improperly Seeks To Circumvent The Class Certification Requirements of Rule 23

The FAC should also be dismissed because it improperly seeks recovery for the benefit of a class of absent plan participants, while explicitly denying that Plaintiffs are bringing a class or collective action. These five Plaintiffs cannot, as a matter of law, bring a direct action in their own name seeking relief on behalf of an absent class without seeking to certify that class.

It is a "bedrock principle" that:

> Fairness and due process concerns make litigation by and against named parties the normal rule and litigation by or against a class the exception to the normal rule. Rule 23 attempts to balance judicial efficiency of litigation by or against classes against fairness and due process concerns, and does so by providing procedures and safeguards designed to ensure fair and adequate protection of the interests of absentee class members.

*Zimmermann v. Epstein Becker & Green, P.C.*, 2010 U.S. Dist. LEXIS 67835, *7 (D. Mass. July 8, 2010), *aff'd by* 657 F.3d 80, 85 (1st Cir. 2011). "Because of the unusual nature of class actions, and the risks they pose to plaintiffs and defendants alike, prosecution of a class action demands strict compliance with Rule 23. Courts have been accordingly quick to protect

defendants who confront class claims without an opportunity to challenge certification." *Id.* at *7-8 (citing *In re American Medical Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996)).

Here, Plaintiffs' claims were purportedly assigned to them "on behalf of themselves and a certified class of similarly situated persons ('Class') (collectively, 'Assignees'), solely for the benefit of the Class." FAC, Ex. A (Assignment). Although Plaintiffs allege that they "hold the assigned claims on behalf of themselves and a class certified in New Mexico State Court," they oddly assert that "this case against Defendants is not brought as a class action or collective action." FAC ¶ 7. Yet Plaintiffs simultaneously request that damages and other relief be awarded "in favor of Plaintiffs for the benefit of the Lu Class[.]" FAC at 10.

But a plaintiff class certified in one action is "not a free floating entity entitled to conduct new and separate lawsuits against new defendants – unless and until it is certified in the new action." *Zimmermann*, 657 F.3d at 85. In *Zimmermann*, the plaintiffs had previously served as class representatives in a successful class action and later sought to bring a new lawsuit, as representatives of the prior-certified class, against some of the previous defendant's business associates. *Id.* at 81-82. The district court dismissed because the plaintiffs were seeking "class-based relief" without seeking certification of the class, and the First Circuit affirmed. *Id.* at 82. As the First Circuit observed, even if the plaintiff classes in the two actions could be identically defined, plaintiffs in the second action must still comply with Rule 23. *Id.* at 85.

Plaintiffs in this case are attempting a similar evasion of Rule 23. They claim this is not a class action, yet seek relief "for the benefit of the Lu Class." FAC at 10. Like in *Zimmermann*, plaintiffs here seek the benefits of a class-wide adjudication of rights, but fail to even attempt to comply with Rule 23. And like in *Zimmerman*, Plaintiffs' FAC should be dismissed.

## CONCLUSION

For the reasons discussed above, OFI respectfully requests that the Court dismiss Plaintiffs' FAC for failure to state a claim.

Dated:  July 21, 2014                               Respectfully submitted,

**Modrall Sperling Roehl Harris & Sisk, P.A.**

By: */s/ Kevin D. Pierce*
      Paul M. Fish
      Kevin D. Pierce
      Attorneys for Defendants
      Post Office Box 2168
      Bank of America Centre
      500 Fourth Street NW, Suite 1000
      Albuquerque, New Mexico 87103-2168
      Phone: 505.848.1800
      &

      **DECHERT LLP**
      Joshua D. N. Hess
      Mark P. DiPerna
      One Bush Street, Suite 1600
      San Francisco, California 94104
      Phone:  415.262.4500

I HEREBY CERTIFY that on the 21st day of July, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

John C. Bienvenu - jbienvenu@rothsteinlaw.com

Kristina Martinez - kemartinez@rothsteinlaw.com

Lynn Lincoln Sarko – lsarko@kellerrohrback.com

T. David Copley – dcopley@kellerrohrback.com

Amy Williams-Derry – awilliams-derry@kellerrohrback.com

Benjamin Gould – bgould@kellerrohrback.com

MODRALL, SPERLING, ROEHL, HARRIS
    & SISK, P.A.

By:   */s/ Kevin D. Pierce*
      Kevin D. Pierce